Bruce Locke. I represent Tynisha Hornbuckle. Ms. Radican is here and she represents Tamrel Hornbuckle. I'm going to take four minutes to deal mostly with the issue of Sex Act v. Commercial Sex Act. Ms. Radican will deal with the Undue Influence Enhancement. I have something to say about the Undue Influence Enhancement also because our clients are in different situations. First with respect to the enhancement under 2G 1.3 v. 4, the District Court held that even though the guidelines provide that you should not apply this in a 1591 case because the amendment to the guidelines specifically state that that enhancement should not be applied to 1591 cases because it was the belief of the guidelines people that 1591 convictions automatically had a commercial sex act occurring. Isn't the commentary that B-4B is not applied to 1591 convictions? Well, using basic English, you can't have a commercial sex act without a sex act. So the way the government reads this, the way the District Court read it, you would always get that enhancement in a 1591 case because there would always be a sex act. Even though you're directed not to use it for a commercial sex act. What I think happened is when this provision was put into the guidelines in 2004, in Amendment 664, at that point in time, the guideline provided for a 24 offense, initial offense number. And that was it. The rest was by enhancement. And at that point, B-4 said if a sex act or sexual contact occurs or if there's a commercial sex act, increase by two levels. At that point in time, you could get, it would be double counting, but it would be double counting allowed by the guidelines, much like the discussion in the Smith case. When Congress passed the Adams-Walsh Act, I think it is, in 2007, and it put in the mandatory minimums of 15 and 10 years for several of the statutes covered by this guideline, the Sentencing Commission said, okay, if it's 1591B-1, that's use of force or a child under 14, level 34. If it's 1591B-2, that's a minor between the ages of 14 and 18 but no use of force, then it's level 30. And then it says for two provisions of the crimes in 2421 through 25, in the two provisions that deal with commercial sex, taking somebody across state lines with the intent that they engage in prostitution, that's level 28. Everything else is 24. And what the guidelines are saying is we've included in that level 30 and 34 the fact that a commercial sex act has occurred. So you don't increase it for that. Okay, you're four and a half minutes in. Did you want to address briefly the undue influence because you said you had a slight variation for your client? Well, basically the position is Tamriel Hornbuckle didn't do anything with these girls. My client was the one who was interacting with the girls. So if anybody would get undue influence, it should just be my client. My position on that is all three of these girls were engaged in prostitution before they ever met any of the Hornbuckles. And therefore, it's inappropriate to say that my client unduly influenced them to engage in prostitution because they were already engaged in it. The one who, the one girl, woman who did testify actually engaged in prostitution before meeting my client, while meeting my client, left my client, engaged in prostitution, and then came back and worked as an adult for Tamriel Hornbuckle as a prostitute. Okay, got it. Thank you. May it please the Court, I'm Erin Vatican. I'm appearing for Tamriel Hornbuckle. Okay, now speak, the acoustics are bad, so speak up and articulate. Okay. Your Honor, I join in Mr. Locke's comments on the enhancement with respect to specific sexual conduct, and I'm focusing on the enhancement of undue influence of a minor. As Mr. Locke stated, there's no evidence in this case that Tamriel Hornbuckle did anything to unduly influence a minor to continue to engage in prostitution. I don't think the government disputes that none of the three minor prostitutes, they all voluntarily started to work for Tynesha. I think the position of the government is that they remained working for Tynesha because of the physical abuse that Tynesha engaged in, they were afraid to leave. What's wrong with that argument? What's wrong with that argument is that the evidence is that Tynesha actually abused them for rule violations. There's no evidence that she abused them because they wanted to leave, no evidence at all that they wanted to leave and they were precluded from leaving. In fact, Alexandria did leave. She said she was never physically abused, and she left when she wanted to. There's a lot of evidence in the record that they were beaten and they were threatened and their money was kept from them, and your response is that all of that abuse was for a different reason, not to coerce them to continue? The evidence actually showed that it was for rule violations. What does that mean, rule violations? She had specific rules about conduct, like for being late or for the time that Passion put her feet up on the couch. That's what the evidence showed. There was no evidence that they wanted to leave and they were abused because they were trying to leave. But even if there are rules and if even all of the physical abuse was as a result of violation of those rules, I don't understand how that constitutes an argument that there was necessarily no undue influence because what were the rules? It sounds as though the structure was such that we are influencing these minors in various ways, including withholding money and so on, taking the money that they earned. I mean, the fact that there might have been a rule, I'm assuming for purposes of my question, that rules existed and that they were evenly applied, that doesn't strike me as a defense. There were no rules that they couldn't leave. There was no evidence of that. But they had nowhere to go and the defendants were retaining all their money. Isn't there evidence of that? Actually, Alexandria testified that it was a choice that she had as to whether she could keep part of the money or whether she could stay there and split the money and they would provide her with room and board. There's no evidence that the arrangement was any different for Passion or Alicia. I think there was evidence that initially there was an agreement about splitting 50-50 and then at some point the defendants just started retaining all of the money. Isn't that right? I believe that might be in the PSR, which would be hearsay. Alexandria testified that it was her choice and that's what she decided to do at some point. And then later on she decided to leave and she voluntarily left without any problem. Did the district court adopt the PSR? Yes, the district court did, I believe. But there was an evidentiary hearing. The defendants disputed application of that enhancement and there was an evidentiary hearing. And Alexandria testified that she voluntarily left with no problem and there was no contrary evidence that the arrangements for Passion or Alicia were different. And there's no evidence that Tamrell was aware of that Tamrell was aware that there was physical abuse and could reasonably foresee that the girls would be afraid to leave. There's no evidence that she was aware of the details of the conversation between Tynesha and the girls and could reasonably foresee they'd be afraid to leave. She did nothing to influence them to remain. And these girls had engaged in prostitution before they ever started working for Tynesha. So they're in a different situation from girls who were homeless on the street, taken in, learned how to engage in prostitution and then continued to engage in prostitution because they didn't have any other place to go. These girls had already engaged in prostitution, knew how to do it. That's what they had done before they even started working for Tynesha. Okay, why don't we hear from the other side? You've gone over time, but we will give you a chance to respond in rebuttal. Good morning. May it please the Court. I'm Camille Skipper. I represent the United States. What the Hornbuckles are asking this Court to do is to find that Judge England abused his discretion when he looked at the near total control that Tynesha had over these minor victims, both by keeping their money and by using physical violence, and that the keeping of the money and the use of physical violence did not undo, when the Court found that it unduly influenced the girls to continue acting, their acts of prostitution based upon Tynesha's, on her schedule, at her direction, and based upon the quotas that Tynesha had set for them, daily quotas for how many men they were supposed to engage in sex with and to bring that money back to her. The record, in this case, supports the District Court's factual findings that the girls were coerced, both by withholding the money and acts of physical violence, and the factual findings are at page 24 of the second volume of the ER. The record, in this case, fully supports those factual findings, both based upon the PSR and the facts adduced at the evidentiary hearing. And it's important to understand that the facts adduced at the evidentiary hearing put all of this conduct in context for Judge England. It wasn't just the testimony of Alexandria concerning her treatment and the treatment that she witnessed Tynesha meet out upon the girls. It was also Detective Steigert's expert testimony placing all of that into context. When we talk about rules that the girls were required to follow, he explained that rules, particularly the rule that they respect their pimp and not talk back, those sorts of rules were used to control minor victims as well as adult victims of prostitution and to keep them in line. Other rules concerning what they were to wear, the shoes they were to wear, when they were to show up, even if they were called at 2 a.m., they had to get up and go to work. Alexandria testified that they didn't have days off, that they really couldn't refuse a job even if they didn't want to go, and that's not just for her but the other two minor victims. If they didn't want to go and they expressed that, they were told that they had to go to work. Are the beatings inflicted by, I'm going to use the first names, Tynesha, relevant conduct of Tamrel? How does that work? Under the guideline, the enhancement applies if a participant exercised undue influence. In this case, Tamrel and Tynesha, again using their first names for clarity, were both engaged in working these girls. Tynesha was the pimp for the minor victims. Tamrel pimped out older girls. I'm trying to get you to focus on Tamrel, what Tamrel actually, what conduct Tamrel actually engaged in. On this record, it's clear that she provided transportation to the girls to and from dates. I'm talking about on undue influence. There's no question she participated in the offense, but on the specific enhancement we're concerned with here. For that point, Your Honor, I don't have a specific act that she committed that would be undue influence. She did participate in one of the beatings, but all the sisters, it appears, participated in that one, and that was against passion for having her shoes on the couch. Right. She was aware of Tynesha's beatings of the girls. That's enough. I mean, your argument is that that's enough? Awareness and foreseeability is enough? Well, yes, in this context, because Tamrel herself doesn't have to have exercised undue influence. As long as she's acting in concert with Tamrel, and Tamrel, I'm sorry, and Tynesha exercises undue influence, she then is susceptible to get the enhancement. She herself doesn't have to. Is the case law in the circuit very clear about that? The case law is not. In other words, sometimes relevant conduct requires actual conduct as opposed to that which is foreseeable by a co-participant. And I'm just asking you if you – I don't mean this as a test of your knowledge of circuit law, but it is enough. You seem to be arguing that it is enough that Tamrel could reasonably foresee and had knowledge that a co-defendant, a co-participant was exercising undue influence and that, therefore, Tamrel herself also gets the enhancement. I am arguing that. I'm not arguing it based on case law. I'm arguing it based on the guidelines themselves that require a participant. And a participant, as explained in the application notes, would be someone who is engaged in the acts. It doesn't have to be the person who is charged. Here, both Tynesha and Tamrel are charged. However, if Tamrel had not been charged in this case – I'm sorry. If Tynesha had not been charged in this case, Tamrel could still get the enhancement based on Tynesha's conduct as a participant. I suppose that Tamrel is part of the enterprise, profiting from the enterprise, advantaged by the coercive influence of the sister. Yes, Your Honor. That's the argument. Yes, Your Honor. So based upon the record that was before the district court, I don't believe that it can be argued realistically that the district court abused its discretion. Going to case law, there isn't a case in the Ninth Circuit that I have found where the minor participants, the minor victims had previously engaged in prostitution and the finding of undue influence was affirmed. The only case that I could find was in the Eleventh Circuit, and it's an unpublished decision from 2013. In that case, it had facts that are rather similar to this. In United States v. Jones, Jones was found to have purchased hair products, jewelry, and makeup. He convinced a 15-year-old that he was in love with her. He took all the money. He set the price. He controlled the cell phone that set up the dates, again, something that occurred in this case. And when the girls refused to participate or were not following the rules, he beat them. And in that case, Jones said, although each girl was involved in prostitution before meeting Jones, the mere fact that a minor has been involved in prostitution does not eliminate the possibility that the undue influence enhancement may be applied. Jones used affection, control, and physical violence to influence the minors to work for him. The principle there is that willingness does not preclude a district court from finding undue influence. And this principle would be familiar to you, Judge Christin, because you raised that issue in dissent in the Calvo case back in January. Willingness alone does not preclude a district court from finding undue influence. And in this case, the fact that the girls had previously engaged in prostitution also should not preclude a finding of undue influence when we have facts such as these, where Tynesha was keeping all of the money, Tynesha was engaging in daily acts of violence, violence that the expert before the court, Detective Stigert, identified as a means of control. And certainly the fact that she focused that violence on one of the victims, indeed, would support his testimony that often the favorite prostitute was targeted for violence in order to maintain control of the others. Well, it seems to me that the mere fact of prior prostitution by these girls doesn't mean that you can't have undue influence for the pimp for later prostitution because it's not the fact of prostitution simpliciter. It may be, when we're talking undue influence by the pimp in the later prostitution, the manner, the frequency, the mere fact of prostitution doesn't seem to me enough because we're talking about influence to do the sort of prostitution that was engaged in while they were under the influence of the Hornbuckles. And that's supported by the language of the guideline enhancement itself, where it mentions a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct. That doesn't point to the pimp who initially turned the minor victim out. This points to sexual conduct prospectively. And as long as this pimp is influenced, unduly influenced a minor to engage in sexual conduct, even if a year before the minor had voluntarily or previously engaged in such conduct, this enhancement can and still should apply. You don't argue, as to Tamrell at least, that the district judge would have done the same thing even without the enhancement, would have imposed the same sentence, 151 months? I can't say that for sure. Okay. Actually, I have a question about that for Tamrell. Doesn't the PSR recommend 135 months? She was sentenced to 151 months. Yes. The judge said he was adopting the PSR. Well, he adopted the findings. I think he adopted it. Didn't he say he was adopting that recommendation? He imposed 151, though, right? Yes. I see that my time has expired. Shall I continue? That's okay. You can answer. Please. At the time of the sentencing, the judge was weighing a number of things, both the evidence that had been adduced at the hearing, their own statements, and the statements that were made by a cousin who also spoke at the hearing, a cousin to the defendants that also spoke at the hearing. It's not clear, however, exactly what was behind the 151-month sentence that was imposed. However, it's not – it hasn't been argued into this Court that it's substantially unreasonable. All right. So just to be clear, the PSR recommended 135 months. She was sentenced to 151 months, and am I mistaken that Judge England said he was adopting the PSR's recommendations as well as its findings, or is that where you think I've – Well, at the beginning of the hearing, the judge noted that it was adopting the findings.  I'm talking about when he imposed sentence. Am I mistaken in understanding that he said he was adopting the recommendations? I'd have to double-check that, Your Honor. And I appreciate this wasn't argued, but these kinds of things in the record bug me, and that's why I asked the question. I just wanted to give you a fair opportunity to respond. I'm sorry, Your Honor. I wasn't present for the sentencing, and I didn't look at that issue closely. Fair enough. Thank you. I see my time has expired, unless the Court has some questions with regard to the other enhancement. Okay. Thank you. Thank you. Now, the government has gone over, and with only 10 minutes and you splitting argument, let's put two minutes on the clock for you to split or do with as you will. Thank you, Your Honor. With respect to Tamriel Hornbuckle and her involvement in this, I think in order for it to be relevant conduct on her, she has to have agreed that that is part of the deal. That's part of what we're doing. What's your strongest authority for that? When you engage in criminal conduct, you have somebody who's like a drug dealer. There's a District of Columbia court case. Justice Roberts, when he was on the District of Columbia, I can't remember the name of it. But in a group effort, you're only accountable for what you agree to do. So a drug dealer, you have the major guy and the little guy. The little guy is only punished for what he did. I appreciate that. But opposing counsel was asked the question. And she said what she's relying upon is the commentary and the guidelines. Do you want to respond to that? I believe that the guidelines provide that you have to have agreed to that part of the criminal conduct in order to be relevant conduct for you. With respect to the undue influence, all three of these young women had places to go. They didn't have to stay. And, in fact, the only one who testified, Alexandria, left after two months, went on and did prostitution on her own, got a job, came back to prostitution, came back to Tamriel as an adult and did prostitution. I agree with the Court that the fact that you've engaged in prostitution before does not mean that you can't be unduly influenced. Okay. As a general proposition. But in this case, there are no findings in the district court that there was any of that conduct. Now, Tynesha Hornbuckle, my client, has anger management issues. But she did well. I understand. She would get upset if somebody was acting in a rude manner or not treating other people with respect. So the evidence is these girls were held in the car. Other girls were told to keep car doors closed while she beat them. Right. That's right. But it wasn't to get them to go out on the street. Let me concede. I conceded she has issues with hitting people. Let me make one comment, Your Honor, on the other enhancement. The way the government and the Court are reading that enhancement, it writes totally out the provision that it doesn't apply to 1591 cases because they're saying if there's a sex act, up by two. Well, you have to have a sex act to have a prostitution sex act. I think this is the argument you made the first time around. Right. I just didn't think I got through with it. I'm just saying that the enhancement is talking about a noncommercial sex act and a commercial sex act. No, I think we've got the argument. Thank you very much. Thank both sides for their arguments. United States v. Hornbuckle now submitted for decision.
judges: Davis, Fletcher, Christen